UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81404-HURLEY

**DANETTE MARSHALL,**
    **Plaintiff,**

v.
**ARYAN UNLIMITED STAFFING SOLUTION/
FANUEIL INC/MC ANDREW & FORBS HOLDING,
and D & D ARY ENTERPRISES, INC.,**
    **Defendants.**
_____/

## ORDER DISMISSING AMENDED COMPLAINT WITHOUT PREJUDICE

This matter is before the court *sua sponte* for review of the court's subject matter jurisdiction. The *pro se* plaintiff in this action has filed a 39-page handwritten amended complaint alleging violations of Title VII (racial and national origin discrimination; religious discrimination; sex discrimination), the ADA (failure to accommodate unidentified medical restriction), and state law claims for intentional infliction of emotional distress and breach of contract [ECF No. 6].

Plaintiff alleges that she believes she was treated disrespectfully and unfairly at the work place due to the fact that she is an African American black female, of non-Carribean Island ancestry. More specifically, she complains that she was the only African-American employee at the "Alley E Toll Plaza" staffed by defendants, and that her co-workers and supervisors, all of Carribean Island ancestry, shunned and disrespected her because she was African-American and unable to speak a Carribean language. She alleges that her supervisor, Aretha, "laid the foundation" by treating her in a "hateful, intimidating, disrespectful, commanding ... subservient" manner on her first day of work. She alleges that her manager, Valencia, took sides with Aretha and threatened to demote plaintiff to a night shift or transfer her to another toll plaza in retaliation for her complaints about

Aretha. She alleges that she accepted the night shift position, fearing a transfer to another toll plaza, and that her co-workers and superiors continued to shun and disrespect her after this reassignment.

She also alleges that race-based derogatory comments were made in her presence on two separate occasions by two separate employees. First, she alleges that "Moor supervisors," including "Gwen," harassed her by saying "[she] did things like a (nigger)." Second, she alleges that Hardy Faneuil, a supervisor in the defendants' Miami District Office, made a comment in her presence about "going home to Africa." Further, she alleges that another supervisor, "Steven," made an inappropriate sexual comment to her, asking her how much she would charge him for a "spanking," and that her complaints about this offensive behavior went unheeded.

Plaintiff alleges that Valencia also discriminated against her on the basis of religion by refusing to allow her to keep her Bible in the employee break room in the same area as the other employee reading material, claiming it might be offensive to some employees.

Finally, plaintiff complains that after sustaining a work-related injury and applying for workers compensation benefits on February 6, 2011, the defendants violated the Americans with Disabilities Act (ADA) by refusing to accommodate and allow her to return to work under an unspecified medical restriction on March 3, 2011.

Following a careful review of the amended complaint, the court concludes that plaintiff fails to state a cognizable claim showing that she is entitled to relief under any of the federal or state law claims asserted.

### 1. Racial/National Origin Discrimination:  Hostile Work Environment

First, under the threshold, combined claim for "hostile work environment/unlawful intentional infliction of emotional harm" (Counts 1 and 2), plaintiff alleges that she was "pushed

around" by her supervisors, with "no Afro American to represent [her] on job," or to "talk to about work or social," and "no non-Islander Afro American on job to be a mentor to look up to." She also complains she was routinely treated with disrespect, isolated and shunned by her co-workers and supervisors.

A hostile work environment occurs when "the workplace is permeated with "discriminatory intimidation, ridicule and insult" that is "sufficiently severe or pervasive enough to "alter the conditions of the victim's employment and create an abusive working environment. *Harris v. Forklift System, Inc.,* 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed.2d 295 (1993). To prevail on a hostile work environment claim, plaintiff must establish that (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee;  (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment, and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1275 (11th Cir. 2002). The fourth element of the test contains both a subjective and objective component. *Mendoza v Borden,* 195 F.3d 1238 (11th Cir. 1999). That is the employee must  "subjectively perceive the harassment as severe and pervasive enough to change the terms or condition of employment and the district court must find that this perception was objectively reasonable. *Id.*

In making the objective determination, the following factors should be considered: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with an employee's job performance. *Harris v. Forklift System, Inc.,* 510

U.S. 17, 23 (1993). "[S]imple teasing, offhand comments and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Further, not all offensive conduct creates a "hostile work environment" – rather, the plaintiff must claim to be singled out *because of* her gender, race or nationality, *and* that the conduct was severe and pervasive. *Williams v. City of Kansas City, Mo.*, 223 F.3d 749 (8th Cir. 2000).

In this case, the amended complaint alleges two isolated racially-based comments made by different supervisors [viz, the comment about plaintiff "working like a nigger" and the comment about "going back to Africa"]. This alleged conduct is too episodic and isolated to establish the objective component of a hostile work environment claim. *McCann v. Tillman*, 526 F.3d 1370 (11th Cir. 2008)(two or three instances of racially derogatory language alone, extending over a period of two years, was too sporadic and isolated to establish hostile work environment claim), *cert. den.*, 555 U.S. 944 (2008). *See e.g. Kouakou v Fideliscare New York*, ___ F. Supp. 2d ___ 2012 WL 6955673 (S. D. N. Y. 2012)(allegation that plaintiff's supervisors spoke to each other in Spanish, called him an "Africano Negro," and that co-workers "verbally attacked" him in support of their "Spanish cause" failed to state hostile work environment claim), and cases cited *infra*; *Sclafani v PC Richard & Son,* 668 F. Supp.2d 423 (E.D.N.Y. 2009) and cases cited *infra*.

The plaintiff's claim for hostile work environment/sexual harassment based on the single inappropriate, offensive comment attributed to supervisor "Steven" is insufficient as a matter of law for the same reason. *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999)(no hostile work environment claim stated with allegations that supervisor told employee "I'm getting fired up" while rubbing his hip against employee's hip; two other instances in which supervisor made sniffing

**4**

sound while looking at employee's groin; one instance of sniffing without looking at groin, and "constant " following and staring).

## 2. Racial/National Origin Discrimination:  Disparate Treatment

Likewise, plaintiff fails to state a claim for disparate treatment/racial or religious discrimination where she alleges a general lack of professionalism and meanness on the part of defendant's staff, who allegedly isolated and shunned plaintiff as the only non-Carribean language speaking employee in the office, as these allegations do not constitute "adverse action" in first instance, and are not attributed to a protected status or characteristic in any event.  *See e.g. Garcia v. College of Staten Island*, 2012 WL 3930448 (E. D. N. Y. 2012), citing *Krasner v HSH Nordbank AG,* 680 F. Supp. 2d 502, 521-22 (S. D. N. Y. 2010)(granting motion to dismiss hostile work environment claim based on generalized allegations of "workplace violence" including threatening, foul and condescending language, bullying, vulgar sexual language, finger-pointing and threats of transfer, where allegations had no plausible relation to plaintiff's gender); *Kendricks v. Westhab, Inc.,* 163 F. Supp. 2d 263 (S. D. N. Y. 2001)(granting motion to dismiss generalized complaints not alleged to be based on protected status).

Nor does the alleged transfer of plaintiff to a night shift, standing alone, describe an "adverse action" which is actionable under Tile VII.  *See Benningfield v. City of Houston*, 147 F.3d 369 (5th Cir. 1998)(transfer to night shift, without more, is not adverse action); *McGowan v. City of Eufala*, 472 F.3d 736 (10th Cir. 2006) (failure to reassign to day shift not "adverse action" where employee did not identify any rationale for requested change, shifts offered no difference in pay or benefits); *Reynoso v. All Foods, Inc*., ___ F Supp. 2d ___, 2012 WL 6093784 (E.D.N.Y. 2012)(transfer to less convenient working hours  not "adverse action" under Title VII).

While plaintiff's subsequent termination clearly constitutes an "adverse employment action," she fails to state a claim for unlawful race or national-origin based discrimination based on this incident where she alleges no direct evidence of bias on part of a decision maker connected to the termination decision, and does not establish a *prima facie* case of discrimination based on circumstantial evidence under the familiar *McDonnell-Douglas* paradigm, i.e. she does not allege the existence of *similarly situated* comparators outside her protected class who were treated more favorably (e.g. non-African American employees in comparable positions (toll worker) with comparable medical restrictions who were accommodated and allowed to work). Instead, plaintiff claims an ADA violation based on defendant's alleged failure to accommodate an unspecified medical restriction, without identifying the nature of her alleged medical disability and without alleging whether and what type of accommodation she requested.

### 3. Religious Discrimination:
### Failure to Accommodate/Disparate Treatment/Hostile Work Environment

Plaintiff also alleges that defendants failed to accommodate her religious beliefs in violation of Title VII by refusing to allow her to display and store her Bible in the employee break room along with other employee reading materials. To establish a *prima facie* case of religious discrimination based on a "failure to accommodate" theory, the plaintiff must show that (1) she has a bona fide religious belief that conflicts with an employment requirement, (2) she informed the defendant of this belief, and (3) she was disciplined for failing to comply with the conflicting employment requirement. *Jones v. TEK Industries, Inc.*, 318 F.3d 355, 359 (8th Cir. 2003).

Liberally reading the *pro se* complaint, the court will assume that the plaintiff held a sincere religious belief and treated the Bible as a personal article of faith. However, she does not allege that

**6**

her desire to carry a Bible as a personal article of faith conflicted with a work requirement (i.e. there is no allegation that she was not allowed to carry a Bible for her own perusal) and there is no allegation that she was disciplined because of a conflict between her religious beliefs and employment requirements (i.e. that she was disciplined for carrying a Bible on her person). She alleges simply that she was told to remove her Bible from the reading materials stored in the employee break area. As she does not appear to assert that any tangible employment action directed against her was based on her religious beliefs, she fails to state a claim for religious discrimination/failure to accommodate. *See Franks v Nebraska*, 2012 W: 71707 (D. Neb. 2012).

Nor do these allegations support a claim for religious discrimination/disparate treatment. To establish a *prima facie* case of religious discrimination under the *McDonnell Douglas* framework, plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for her position; and (3) she suffered an adverse employment action under circumstances permitting an inference of unlawful discrimination. The final element is typically satisfied by showing that similarly situated employees who were not members of the protected class were treated differently. *See e.g. Pye v Nu Aire, Inc.*, 641 F.3d 1011 (8th Cir. 2011).

In this case, the court will assume existence of the first two elements. However, plaintiff fails to state a prima facie claim for religious discrimination/disparate treatment where she does not allege any facts susceptible of inference that religious discrimination was a motivating factor in defendant's decision to bar her from displaying and storing her Bible in the common reading materials maintained in the employee break room. For example, there is no allegation that other employees were treated more favorably for a religious reason (i.e. other employees were allowed to publicly display and maintain religious reading in the break room). In other words, plaintiff alleges no facts

7

which would support the inference that the defendant singled out plaintiff's Bible for designation as contraband. Further, as discussed above, the decision to deny her request to display the Bible in the break room did not rise to the level of an adverse employment action. Thus, plaintiff fails to establish the third element of a prima facie case of religious discrimination/disparate treatment. *See Franks v Nebraska*, 2012 W: 71707 (D. Neb. 2012).

Finally, the court does not find these allegations susceptible of stating a religious hostile work environment claim. *See e.g. Mitchell v University Medical Center, Inc.*, 2010 WL 3155842 (W.D. Ky. 2010)(no objective harassment based on a verbal warning to stop talking about religion at work)

### 4. ADA Failure to Accommodate Claim

In order to establish a *prima facie* case of disability discrimination under the ADA for failure to accommodate, plaintiff must show: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without a reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested a reasonable accommodation, and (5) her employer failed to provide the necessary accommodation. *Melange v. City of Center Line,* 482 Fed. Appx. 81 (6th Cir. 2012). An employee's disability claim should be dismissed if the employee fails to identify the nature of the disability, or fails to identify the "reasonable accommodation" requested. *Tubbs v. Formica Corp.,* 107 Fed Appx. 485 (6th Cir. 2004).

Here, plaintiff does not state an ADA failure to accommodate claim where she fails to describe the nature of her alleged disability in the first instance, fails to allege a requested accommodation, fails to allege her employer was informed of the disability and requested accommodation, and fails to allege that her employer failed to accommodate the request. *See e.g. Falso v. Churchville-Chili Cent. School Dist.*, 547 F. Supp. 2d 233 (W.D.N.Y. 2008)(dismissing

ADA failure to accommodate claim based on unspecified learning disability).

It is accordingly **ORDERED and ADJUDGED**:

1.  The plaintiff's *pro se* amended complaint [ECF No. 6] is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim and lack of subject matter jurisdiction.

2.  Plaintiff shall have one further and final opportunity to replead her claims to cure the deficiencies outlined in this order, and shall file a third amended complaint within **TWENTY (20) DAYS** from the date of entry of this order if she chooses to pursue her claims.

3.  The *pro se* plaintiff is further reminded of her obligation to satisfy the pleading requirements of Fed. R. Civ. P. 8, which requires that a complaint "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)), and must offer sufficient allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" *Ashcroft* at 678.

4.  Plaintiff is strongly encouraged to consult and/or retain an attorney to assist in the pleading and prosecution of her claims.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 6th day of March, 2013.

Daniel T. K. Hurley
United States District Judge

cc. Danette Marshall, *pro se*